UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## 24-80011-CR-CANNON/MCCABE

Case No. _____

18 U.S.C. § 1349
18 U.S.C. § 982(a)(7)

UNITED STATES OF AMERICA,

vs.

JAMIE MICHAEL LARKIN,

      Defendant.
_____/

FILED BY ___MP___ D.C.
Jan 22, 2024
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

### INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times material to this Information:

### The Medicare Program

1. The Medicare Program ("Medicare") was a federal health care program that provided free or below-cost health care benefits to individuals who were sixty-five years of age or older or disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency the Center for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).

3. Medicare was subdivided into multiple program "parts." Medicare Part D subsidized the costs of prescription drugs.

## Medicare Part D and Prescription Drugs

4. To receive Part D benefits, a beneficiary enrolled in a Medicare drug plan. Medicare drug plans were operated by private companies approved by Medicare. Those companies were often referred to as drug plan "sponsors." A beneficiary in a Medicare drug plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the prescription.

5. A pharmacy could participate in the Part D Program by entering a retail network agreement directly with a plan or with one or more Pharmacy Benefit Managers ("PBMs"). A PBM acted on behalf of one or more Medicare drug plans. Through a plan's PBM, a pharmacy could join the plan's network. When a Part D beneficiary presented a prescription to a pharmacy, the pharmacy submitted a claim either directly to the plan or to a PBM that represented the beneficiary's Medicare drug plan. The plan or PBM determined whether the pharmacy was entitled to payment for each claim and periodically paid the pharmacy for outstanding claims. The drug plan's sponsor reimbursed the PBM for its payments to the pharmacy.

6. A pharmacy could also submit claims to a Medicare drug plan to whose network the pharmacy did not belong. Submission of such out-of-network claims was not common and often resulted in smaller payments to the pharmacy by the drug plan sponsor.

7. Medicare, through CMS, compensated the Medicare drug plan sponsors. Medicare paid the sponsors a monthly fee for each Medicare beneficiary of the sponsor's plans. Such payments were called capitation fees. The capitation fee was adjusted periodically based on various factors, including the beneficiary's medical conditions. In addition, in some cases where a sponsor's expenses for a beneficiary's prescription drugs exceeded that beneficiary's capitation

fee, Medicare reimbursed the sponsor for a portion of those additional expenses.

8. Medicare and Medicare drug plan sponsors were "health care benefit program[s]" as defined in Title 18, United States Code, Section 24(b).

### The Defendant, other Individuals and a Related Entity

9. Rite Care Pharmacy d/b/a/ Marga Pharmacy, Inc. ("Rite Care") was a Georgia corporation with its listed place of business as 2986 Johnson Ferry Road, Suite 116, Marietta, Georgia.

10. Co-conspirator 1 was a resident of the Southern District of Florida and a beneficial owner of Rite Care.

11. Co-conspirator 2 was a resident of the Southern District of Florida and a beneficial owner of Rite Care.

12. Defendant **JAMIE MICHAEL LARKIN**, a resident of Palm Beach County, Florida, was the named owner of Rite Care and controlled its bank accounts.

### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

From in or around January 2021, and continuing through in or around December 2021, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

**JAMIE MICHAEL LARKIN,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate and agree with Co-conspirator 1, Co-Conspirator 2, and others, known and unknown to the United States Attorney, to commit an offenses against the United States, that is, to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare,

and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

## Purpose of the Conspiracy

13. It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare; (b) concealing the submission of false and fraudulent claims to Medicare; (c) concealing the receipt of the fraud proceeds; and (d) diverting the fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud scheme.

## Manner and Means of the Conspiracy

The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

14. Co-Conspirator 1 and Co-Conspirator 2 offered and paid kickbacks and bribes to telemarketing companies to obtain patient leads and to telemedicine companies to pay doctors to write false prescriptions for medically unnecessary prescription drugs to be billed by Rite Care.

15. **JAMIE MICHAEL LARKIN** falsely stated in writing that he was the sole owner of Rite Care and that Co-Conspirator 1 and Co-Conspirator 2 were not involved in the pharmacy's operations when, in fact, this was not true.

16.     **JAMIE MICHAEL LARKIN** signed numerous documents related to the pharmacy's operation, sent written communications related to the pharmacy's operation, and also conducted the pharmacy's financial transactions, all while residing in Palm Beach County, Florida.

17.     **JAMIE MICHAEL LARKIN**, Co-Conspirator 1, and Co-Conspirator 2 submitted and caused Rite Care to submit false and fraudulent claims to Medicare Part D, via interstate wire communications, for expensive prescription drugs dispensed to Medicare beneficiaries that were medically unnecessary.

18.     As a result of such false and fraudulent claims, Medicare prescription drug plan sponsors, through their PBMs, made overpayments funded by the Medicare Part D Program to Rite Care's corporate bank accounts in the approximate amount of $997,911.

19.     **JAMIE MICHAEL LARKIN**, Co-Conspirator 1, Co-Conspirator 2, and their co-conspirators used the proceeds of the fraud for their personal use and benefit, the use and benefit of others, and to further the fraud scheme.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE
### (18 U.S.C. § 982)

1.      The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **JAMIE MICHAEL LARKIN**, has an interest.

2.      Upon conviction of a violation of Title 18, United States Code, Section 1349, as alleged in this Information, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense, pursuant to Title 18, United States Code, Section 982(a)(7).

All pursuant to Title 18, United States Code, Section 982(a)(7), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

_____
MARKENZY LAPOINTE
UNITED STATES ATTORNEY

_____
TIMOTHY J. ABRAHAM
ASSISTANT UNITED
STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: _____

v.

JAMIE MICHAEL LARKIN,

**CERTIFICATE OF TRIAL ATTORNEY**

_____/

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of counts _____

**Court Division** (select one)
- ☐ Miami    ☐ Key West    ☐ FTP
- ☐ FTL      ☒ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) No
   List language and/or dialect: _____

4. This case will take __0__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I   ☒ 0 to 5 days
   - II  ☐ 6 to 10 days
   - III ☐ 11 to 20 days
   - IV  ☐ 21 to 60 days
   - V   ☐ 61 days and over

   (Check only one)
   - ☐ Petty
   - ☐ Minor
   - ☐ Misdemeanor
   - ☒ Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No
15. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

By: _____
Timothy J. Abraham
Assistant United States Attorney
FL Bar No.    114327

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: _____ JAMIE MICHAEL LARKIN _____

**Case No**: _____

Count #:  1

18, United States Code, §§ 1349 and 1347

Conspiracy to Commit Health Care Fraud
* **Max. Term of Imprisonment:**  10 years
* **Mandatory Min. Term of Imprisonment (if applicable):**  N/A
* **Max. Supervised Release:**  3 years
* **Max. Fine:**  $250,000 or twice the gross gain or loss from the offense

*Refers only to possible term of incarceration, supervised release and fines.  It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.