UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cr-8011-Cannon

UNITED STATES OF AMERICA

vs.

JAMIE MICHAEL LARKIN,

          Defendant.
_____/

## STIPULATED FACTUAL PROFFER

If this matter were to proceed to trial, the Government would prove the stated facts beyond a reasonable doubt. The Parties agree that these facts, which do not include all facts known to the Government and the Defendant, are sufficient to prove the Defendant's guilt for conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349 and Section 1347.

As charged in the information, from in or around January 2021, and continuing through in or around December 2021, in (Delray Beach) Palm Beach County, in the Southern District of Florida, and elsewhere, the Defendant JAMIE MICHAEL LARKIN did knowingly and willfully combine, conspire, confederate, and agree with Patrick O'Brien, Omar Solari, and others, to commit health care fraud and/or the Defendant acted with deliberate ignorance and reckless disregard as to the filing of false claims for unnecessary pharmaceuticals with Medicare.

LARKIN, along with his co-conspirators, owned and operated a pharmacy that was used to defraud Medicare, Rite Care Pharmacy d/b/a Marga Pharmacy, Inc., located in Marietta, Georgia. LARKIN and several co-conspirators took actions in this District, including in Palm Beach County, Florida, in order to further the conspiracy.

From in or around January 2021 through in or around December 2021, Rite Care pharmacy submitted false and fraudulent claims to Medicare that resulted in reimbursement for

unnecessary pharmaceuticals in the amount of approximately $997,911 in U.S. currency.[1] In general, the scheme worked as follows: LARKIN signed numerous documents and made materially false statements, falsely stating that he was the sole owner of Rite Care Pharmacy, in order to cover-up the involvement of his co-conspirators Patrick O'Brien and Omar Solari. If Medicare had known of those co-conspirators' involvement in Rite Care Pharmacy, it would likely have resulted in non-payment of claims. Patrick O'Brien and Omar Solari were involved in past audits related to other pharmacies and insurance companies.

After establishing the pharmacy and obtaining the necessary contracts in LARKIN's name, LARKIN and his co-conspirators then obtained "patient leads," lists containing the names and telephone numbers for Medicare beneficiaries. Telemarketers then cold-called these Medicare beneficiaries, encouraging them to accept prescriptions for certain pre-selected, highly-reimbursable medications, primarily topical creams, at no cost to the beneficiaries. In all or nearly all cases, the beneficiaries had no need for the medication. Next, LARKIN and his co-conspirators obtained signed prescriptions for these medically unnecessary medications through paying telemedicine companies kickbacks for bogus telephone consultations with the Medicare beneficiaries, resulting in the creation of thousands of falsified prescriptions.

LARKIN, who resided in Delray Beach, Florida, executed documents at the request of Patrick O'Brien and Omar Solari. In addition, LARKIN communicated with those co-conspirators about what financial transactions he should conduct in the Rite Care Pharmacy's bank accounts. Some of the Marga Pharmacy, Inc. corporate bank account checks had LARKIN's residential address in Delray Beach, Florida on them and LARKIN performed some of the withdrawals and bank transactions while he was located in Palm Beach County, Florida.

---

[1] This value is calculated in this case using the CPP (the net amount the plan paid for the standard benefits (covered Part D drugs)" while also using the LICS (the low-income subsidy) for each Part D drug.

On or about September 2, 2021, at the direction of the other co-conspirators, LARKIN stated in writing to the Georgia Board of Pharmacy that he was the sole owner of Rite Care Pharmacy d/b/a Marga Pharmacy, Inc. In addition, on June 29, 2021, he sent an email from margapharmrx@gmail.com to a wholesale distributer of pharmaceuticals indicating that he was the "sole 100% owner of Marga Pharmacy Inc." in trying to obtain a purchase history in order for the pharmacy to obtain a PBM contract.

In the case of the telemedicine companies, physicians employed by the telemedicine companies had cursory (or in some cases, no) telephone conversations with the beneficiaries and then signed prescriptions for the pre-selected medication. In other words, there was no objective medical examination of the beneficiaries and the medication was not prescribed for the treatment of medically evaluated conditions. LARKIN and his co-conspirators paid the telemedicine companies kickbacks based on a set fee per Medicare beneficiary in exchange for the companies providing the signed prescriptions. These kickbacks were often described on invoices as "credits" or "consulting fees" in order to disguise the fact that they were in fact payments based on the number of medically unnecessary prescriptions provided. Once they had the signed prescriptions, LARKIN and his co-conspirators used them to submit false and fraudulent claims to Medicare, sometimes including multiple months of refills, and often despite the fact that many beneficiaries complained that they did not want the medication, did not use it, or had too much of it.

On March 17, 2023, in a voluntary interview, LARKIN admitted to law enforcement that O'Brien and Solari needed to use LARKIN as the named owner because they had "burned" relationships with insurance companies through other pharmacies owned in their own name.

LARKIN told law enforcement that he was an equal investor in Rite Care Pharmacy and that he invested $115,000 in initially in exchange for 33% of the profits. Ultimately, LARKIN stated that he was repaid only $70,000 and actually lost money during this conspiracy. LARKIN

admitted that he could see the deposits and withdrawals in the Rite Care Pharmacy bank accounts and that he conducted financial transactions and signed documents as directed by his co-conspirators.

The Government can also offer Medicare claims data, bank records, corporate records, witness testimony, and other evidence which supports this factual proffer. This factual proffer is not a recitation of all facts that could be proved if this matter were to proceed to trial but just a recitation of the facts deemed sufficient for this guilty plea.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 2/22/24     By: _____
TIMOTHY J. ABRAHAM
ASSISTANT UNITED STATES ATTORNEY

Date: 2/22/24     By: _____
TAMA KUDMAN
ATTORNEY FOR THE DEFENDANT

Date: 2/22/24     By: _____
JAMIE MICHAEL LARKIN
DEFENDANT